UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DISTINCTIVE CABINETRY, INC.,

        Plaintiff,[1]                CIVIL ACTION NO. 08-10233

       v.                     DISTRICT JUDGE JOHN FEIKENS

HOME DEPOT U.S.A., INC.,        MAGISTRATE JUDGE VIRGINIA MORGAN

        Defendant.[2]
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This matter comes before the court on defendant's Motion for Summary Judgment (D/E

#17).  Plaintiff filed a response in opposition to the motion (D/E #18) and defendant filed a reply

to that response (D/E #20).  This court held a hearing on the motion on April 1, 2009, and

granted plaintiff leave to file supplemental exhibits to the response brief.  Plaintiff filed those

supplemental exhibits (D/E #22, #23) and defendant subsequently filed a supplemental brief,

_____

[1]Originally, Randy Fenkell was also a plaintiff in this action (D/E #1).  However, the
parties later stipulated that the case caption should be changed to list only Distinctive Cabinetry,
Inc. as a plaintiff (D/E #24) and the Honorable John Feikens entered an order accepting that
stipulation (D/E #26).  The court would note that, because the caption was only recently
amended, the briefs all identify Fenkell as a plaintiff, rather than as plaintiff's agent.

[2]Plaintiff also named Patriot Timber Products International, Incorporated ("Patriot
Timber") as a defendant in the complaint (D/E #1), but the parties later stipulated to a dismissal
of Patriot Timber on January 28, 2009 (D/E #16).

also with the permission of the court (D/E #25).  For the reasons stated below, this Court

recommends that defendant's motion be **GRANTED**.

## II. Background

### A. Complaint

On January 15, 2008, plaintiff filed the complaint in this matter (D/E #1).  In that

complaint, plaintiff alleges that defendant sold plywood to plaintiff and plaintiff installed the

plywood as part of shelving and cabinetry it built for the business entity known as Plum Market.

Plaintiff also alleges that the wood began to warp and plaintiff spent great time and expense

attempting to resolve and ameliorate the warped shelves.  Plaintiff further alleges that it lost

future contracts with Plum Market because of the warped shelves.  Plaintiff seeks damages,

including consequential damages, on two separate causes of action: Innocent Misrepresentation

and Breach of Warranty under the Uniform Commercial Code ("UCC").

### B. Motion before the Court

On February 13, 2009, defendant filed the motion for summary judgment pending before

the Court (D/E #17).  In that motion, defendant argues that plaintiff's "innocent

misrepresentation" claim is a tort claim barred by the "Economic Loss Doctrine."  Defendant

also argues that no genuine issue of material fact exists as to whether the goods were defective

and, therefore, it is entitled to judgment as a matter of law.  Defendant further argues that it

disclaimed any consequential damages and most warranties through forms given to plaintiff at

the time of sale.

On March 13, 2003, plaintiff filed a response to defendant's motion for summary

judgment (D/E #18).  In that response, plaintiff argues that its innocent misrepresentation claim

is not barred by the economic loss doctrine because it is a contract claim fully encompassed by

Michigan's version of the UCC.  Plaintiff also argues that a genuine issue of material fact is in

dispute with respect to whether the goods delivered by defendant were defective.  Plaintiff

further argues that the UCC provides for both consequential damages and the warranties alleged

by plaintiff, and that defendant could not waive those UCC provisions through a unsigned form

given to plaintiff as part of his receipt.

On March 19, 2009, defendant filed a reply to plaintiff's response in which it reiterated

its earlier arguments (D/E #20).

On April 1, 2009, the court heard oral arguments on this motion.  During that hearing, the

court stated that it would permit plaintiff to file supplemental exhibits to its response brief and

defendant to file a supplemental brief in response.  Plaintiff subsequently filed its supplemental

exhibits (D/E #22, #23) and, on April 7, 2009, defendant filed its supplemental brief (D/E #25).

### III. Standard of Review

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure

56(b), which provides that "[a] party against whom a claim, counterclaim, or cross-claim is

asserted or a declaratory judgment is sought may, at any time, move without or without

supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

    **A. Innocent Misrepresentation Claim**

Defendant argues that plaintiff's innocent misrepresentation claim is a tort claim barred by the economic loss doctrine.  In discussing Michigan's economic loss doctrine, the Sixth Circuit has stated:

> The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where

-4-

> economic expectations are protected by commercial and contract
> law, and those involving the sale of defective products to
> individual consumers who are injured in a manner which has
> traditionally been remedied by resort to the law of torts.  [Imaging
> Financial Services, Inc. v. Lettergraphics/Detroit, Inc., 178 F.3d
> 1294 (table), 1999 WL 115473, *3 (6th Cir. 1999) (quoting
> Neibarger v. Universal Cooperatives, Inc., 439 Mich 512,  (Mich.
> 1992)).]

Here, the economic loss doctrine applies because plaintiff is seeking to recover for

economic loss caused by an alleged defective product purchased for commercial purposes and,

as such, his exclusive remedy is provided by the UCC and not in tort.  See Neibarger, 439 Mich.

at 527-528.  Defendant is also correct in identifying a claim for innocent misrepresentation as a

tort claim.  See Zaremba Equipment, Inc. v. Harco Nat'l. Ins. Co., 280 Mich. App. 16, 40 (Mich.

App. 2008) ("plaintiff's fraud and innocent misrepresentation claims sound in tort"); Novak v.

Nationwide Mut. Ins. Co., 235 Mich. App 675, 688 (1999) (describing elements of claim); 2

Restatement, Torts, § 552C.[3]  Given that the economic loss doctrine applies to this case and that

plaintiff's claim for innocent misrepresentation is a tort claim, the innocent misrepresentation is

barred and defendant is entitled to summary judgment on it.

Two cases from the United States District Court for the Western District discussing

Michigan law are on point and they agree with defendant's argument that the economic loss

doctrine bars claims of innocent misrepresentation.  See Lake & Piepkow Farms v. Purina Mills,

Inc., 955 F. Supp. 791, 795 (W.D. Mich. 1997) (Quist, J.); ADA Gas Inc. v. Wohlert Coporation,

---

[3]There is an exception to economic loss doctrine for certain kinds of fraud claims, like
fraud in the inducement, that are extraneous to the contract, Huron Tool & Eng'g. Co. v.
Precision Consulting Servs. Inc., 209 Mich. App. 365, 372-373 (Mich. App. 1995), but that does
not apply here because plaintiff does not allege such fraud and there does not appear to be such a
claim given that plaintiff does not allege any misrepresentations distinct from the breach of
warranty claims.

No. 5:98-CV-155, 1999 WL 33593492, *4-5 (W.D. Mich. October 8, 1999) (Miles, J.)  See also

Imaging Financial Services, Inc. v. Lettergraphics/Detroit, Inc., 178 F.3d 1294 (table), 1999 WL

115473, *3 (6th Cir. 1999) (holding that, because all allegations of fraud and misrepresentation

referenced the "quality and character of the goods sold" and were not distinct form the breach of

contract and/or warranty claims, they fell within the ambit of the economic loss doctrine and

were, therefore, barred).

Plaintiff argues that his innocent misrepresentation claim is a contract claim fully

encompassed by the UCC and it cites to M.C.L. § 440.2715, which relates to a buyer's incidental

and consequential damages.  M.C.L. § 440.2715 provides:

> (1) Incidental damages resulting from the seller's breach include
> expenses reasonably incurred in inspection, receipt, transportation
> and care and custody of goods rightfully rejected, any
> commercially reasonable charges, expenses or commissions in
> connection with effecting cover and any other reasonable expense
> incident to the delay or other breach.

> (2) Consequential damages resulting from the seller's breach
> include

> (a) any loss resulting from general or particular requirements and
> needs of which the seller at the time of contracting had reason to
> know and which could not reasonably be prevented by cover or
> otherwise; and

> (b) injury to person or property proximately resulting from any
> breach of warranty.

Given that language, plaintiff cannot demonstrate that his innocent misrepresentation claim is

based in the UCC by citing to M.C.L. § 440.2715 because that section only involves remedies

and does not provide the underlying basis for an action.

With respect to other sections of Michigan's version of the UCC, Justice Kelly of the Michigan Supreme Court does appear to have argued in a dissent, <u>General Motors Corp. v. Alumi-Bunk, Inc.</u>, 482 Mich. 1080, 757 N.W.2d 859, 862 (Mich. 2008) (Kelly, J. dissenting) that M.C.L § 440.1103[4] provides a basis for the assertion that the UCC provides an exception to the economic loss doctrine for all claims of fraud and misrepresentation, but plaintiff does not argue this and, in any event, it was argued in a dissent rejected by the majority of that court.

Therefore, under Michigan law, an innocent misrepresentation claim is a tort claim and, in this case, plaintiff's innocent misrepresentation claim is barred by the economic loss doctrine.[5]

**B. Breach of Warranty Claims**

Plaintiff's complaint alleges that the plywood sold by defendant was subject to warranties, both expressed and implied, of merchantability and fitness for a particular purpose. (Complaint, ¶ 36). The complaint also identifies the warranty of fitness for a particular purpose as providing that the plywood "would in fact be suitable for use as shelving and not subject to warping (Complaint, ¶ 37) while plaintiff's counsel asserted during oral argument that plaintiff had been given an express warranty that the plywood was equal to the samples plaintiff's agent had tested, high end, ascetically pleasing, and fit to be used shelving and cabinetry at Plum

---

[4]M.C.L. § 440.1103 provides: "Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

[5]This Court would also note that defendant would also be entitled to summary judgment on the innocent misrepresentation claim because, as discussed below, no genuine issue of material fact exists with respect to whether the plywood was defective.

Market.  According to the complaint, defendant breached those express and implied warranties (Complaint, ¶ 37).

In its motion for summary judgment, defendant argues that it is entitled to summary judgment on both legal and factual grounds.  Each of those arguments will be addressed in turn and, while this Court finds some of defendant's arguments to be unpersuasive, it does recommend that defendant be granted summary judgment on plaintiff's breach of warranty claims because no genuine issue of material fact is in dispute with respect to whether the plywood sold by defendant was defective and defendant is entitled to judgment as a matter of law.

### 1. Alleged Lack of Express Warranty

Defendant first argues that it is entitled to summary judgment on plaintiff's claim that it breached an express warranty on the basis that "Fenkell admitted in his deposition that Plaintiffs were never given an express warranty by Home Depot with any of their purchases of the oak plywood at issue."  (Defendant's Brief in Support of Motion for Summary Judgment, p. 9)  In support of that argument, defendant cites to testimony from Fenkell's deposition, but, contrary to what defendant asserts, that testimony merely provides that Fenkell does not have any documents supporting plaintiff's claim that defendant gave plaintiff, through Fenkell, an express warranty.  (Deposition of Randy Fenkell, p. 64; attached as Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment)  Moreover, as described by Michigan's version of the UCC, an express warranty need not be written:

(1) Express warranties by the seller are created as follows:

(a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty, except as provided in the art multiples sales act and Act No. 121 of the Public Acts of 1970, being sections 442.321 to 442.325 of the Michigan Compiled Laws. [M.C.L. § 440.2313 (internal footnote omitted)]

**2. Alleged Exclusion of Implied Warranties**

Defendant also argues that it excluded any implied warranties of merchantability or of fitness for a particular purpose pursuant to M.C.L. § 440.2316(2)-(3) through the "SSCI forms" given to plaintiff at time of the sales.[6]  In those subsections, M.C.L. § 440.2316 provides:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of

---

[6]While defendant asserts that it gave plaintiff SSCI forms on at least three separate occasions (Invoices, attached as Exhibits C, D, and E to Defendant's Motion for Summary Judgment), only one of those invoices is complete (Invoice, attached as Exhibit D to Defendant's Motion for Summary Judgment).  At his deposition, Fenkell admitted to receiving such a form at least one time after making a purchase.  (Deposition of Randy Fenkell, pp. 46-48; attached as Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment)

fitness the exclusion must be by a writing and conspicuous.
Language to exclude all implied warranties of fitness is sufficient
if it states, for example, that "There are no warranties which extend
beyond the description on the face hereof."

(3) Notwithstanding subsection (2):

(a) unless the circumstances indicate otherwise, all implied
warranties are excluded by expressions like "as is", "with all
faults" or other language which in common understanding calls the
buyer's attention to the exclusion of warranties and makes plain
that there is no implied warranty; and

(b) when the buyer before entering into the contract has examined
the goods or the sample or model as fully as he desired or has
refused to examine the goods there is no implied warranty with
regard to defects which an examination ought in the circumstances
to have revealed to him; and

(c) an implied warranty can also be excluded or modified by
course of dealing or course of performance or usage of trade; and

(d) with respect to the sale of cattle, hogs, or sheep, there is no
implied warranty that the cattle, hogs, or sheep are free from
disease, if the seller shows that all state and federal law concerning
animal health has been satisfied.   [M.C.L. § 440.2316 (internal
footnote omitted)]

### a. Statute of Frauds

As a preliminary matter, this Court would note that, while the parties discuss the SSCI

forms in terms of the UCC's Statute of Frauds, that provision of the UCC is not at issue here.

The UCC's Statute of Frauds provides, in part, that "a contract for the sale of goods for the price

of $1,000.00 or more is not enforceable . . . unless there is a writing sufficient to indicate that a

contract for sale has been made between the parties and signed by the party against whom

enforcement is sought or by his or her authorized agent or broker" M.C.L. § 440.2201(1).  The

parties dispute whether the SSCI forms are writings to satisfy the Statute of Frauds and they

appear to believe that the answer to that question is dispositive on the issue of whether defendant

excluded any implied warranties.  However, the parties appear to have confused the questions of

whether there is an enforceable contract, which is addressed by the Statute of Frauds, and what

the terms of the contract are, which is addressed by other sections of the UCC.

In this case, there is clearly an enforceable contract.  Neither the SSCI forms or any other

writings constitute a writing that can satisfy the Statute of Fraud, because no writing is signed by

the party against whom enforcement of the writing is sought, but a contract for the sale of goods

for the price of $1,000.00 or more can be enforced, even if there is no writing sufficient to satisfy

the Statute of Frauds, where the goods have been paid for and accepted.  M.C.L. §

440.2201(3)(c).  That is what happened here and, given that there is an enforceable contract, the

relevant question is what the terms of that contract are and whether the exclusion of implied

warranties found in the SSCI forms are part of that contract.

### b. Terms of the Contract

"A contract for sale of goods may be made in any manner sufficient to show agreement,

including conduct by both parties which recognizes the existence of such a contract."  M.C.L. §

440.2204(1).  In this case, the contract was formed when plaintiff, through Fenkell, made an

offer, to purchase the plywood, *i.e.* placed an order, and that offer was accepted by defendant.[7]

Moreover, as noted above, it appears that defendant provided Fenkell with the SSCI forms at the

---

[7]Unless otherwise unambiguously indicated by the language or circumstances, "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances" and "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods" M.C.L. § 440.2206(1)(a)-(b).

time of defendant's acceptance of plaintiff's orders, or at the time of at least one of plaintiff's orders. However, outside of the evidence relating to the potential express warranties, there is no evidence that the question of warranties was addressed prior to the offer and acceptance.

In light of the complete lack of evidence or argument suggesting that an exclusion of implied warranties was discussed prior to defendant's acceptance, its acceptance of plaintiff's offer contained terms additional to or different from those in the offer when defendant provided plaintiff with SSCI forms along with its promise to promptly ship the goods. Under the common law, an acceptance or confirmation which contained terms additional to or different from those of the offer constituted a rejection of the offer and thus became a counter offer. See, e.g., Harper Bldg. Co. v. Kaplan, 332 Mich. 651, 655-656 (1952) The UCC recognized that in commercial transactions, the terms of the offer and those of the acceptance will seldom be identical and that in many, but not all cases the parties do not impart such significance to the terms on the printed forms. Dorton v. Collins & Aikman Corporation, 453 F.2d 1161, 1166 (6th Cir. 1972). Thus, M.C.L. § 440.2207 provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

-12-

> (3) Conduct by both parties which recognizes the existence of a
> contract is sufficient to establish a contract for sale although the
> writings of the parties do not otherwise establish a contract. In
> such case the terms of the particular contract consist of those terms
> on which the writings of the parties agree, together with any
> supplementary terms incorporated under any other provisions of
> this act.

In this case, the SSCI forms contained an exclusion of implied warranties, which was a term additional to those offered, and that exclusion did not become part of the contract pursuant to M.C.L. § 440.2207. Defendant argues that the exclusion of implied warranties became part of the contract pursuant to § 440.2207(2) because, while the exclusion of implied warranties was an additional term, defendant accepted plaintiff's offer and this case involves a contract between merchants.

Plaintiff argues in response that the exclusion of implied warranties is not part of the contract between the parties because the exclusion is only found in the SSCI forms and those forms expressly provided that plaintiff must sign the forms for their terms to apply, which plaintiff never did. As described above, an expression of acceptance containing terms additional to or different from the offer does not operate as an acceptance of that offer where acceptance is expressly made conditional on assent to the additional or different terms. M.C.L. § 440.2207(1). It is true that the only complete copy of an SSCI form provided to the court expressly states that the purchaser, *i.e.* plaintiff, must sign the form, but Michigan law provides that conditional assent provisions are "narrowly construed to require that the acceptance must clearly reveal that the offeree is unwilling to proceed unless assured of the offeror's assent to the additional or different terms." Challenge Mach. Co. v. Mattison Mach. Works, 138 Mich.App. 15, 22 (1984). Here, despite the language of defendant's standard form, there is nothing in defendant's conduct

that would indicate an unwillingness to proceed unless it obtained the assent of the other party to the warranty provisions.  On the contrary, despite the fact that plaintiff never signed the forms, defendant proceeded to accept payment and ship the goods.

While plaintiff's argument that defendant made its acceptance conditional to assent to the additional terms is unpersuasive, the exclusion of implied warranties is still not part of the contract between the parties.  In this case, while the conduct of the parties recognizes the existence of a contract, it appears that the writings provided by the parties are insufficient to establish a contract and, consequently, the court must look to § 440.2207(3) to supply additional terms.  See Challenge Mach. Co. v. Mattison Mach. Works, 138 Mich. App. 15, 22-23 (1984) (stating that § 440.2207(3) "only comes into play if the writings fail to establish a contract, but the conduct of the parties recognizes the existence of such a contract.").  As discussed above, § 440.2207(3) provides that, in cases where the conduct of both parties recognizes the existence of a contract although the writings of the parties do not otherwise establish a contract, the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the UCC.  Here, the writings of the parties do not agree with respect to warranties and the supplementary terms incorporated by the UCC provide for the implied warranties defendant claims it excluded.  See M.C.L. § 440.2314 ("Implied warranty; merchantability, course of dealing, usage of trade"); M.C.L. § 440.2315 ("Implied warranty; fitness for a particular purpose"); S. C. Gray, Inc. v. Ford Motor Co., 92 Mich.App. 789, 807 (Mich. App. 1979) (finding that, unless excluded, implied warranties are in effect); Bosway Tube & Steel Corp. v. McKay Mach. Co., 65 Mich.App. 426, 429-430 (Mich. App. 1975) (finding that the UCC implied warranty of merchantability is in effect unless excluded).

-14-

Moreover, even if the SSCI forms were writings sufficient to establish a contract, the exclusion of implied warranties would still not be part of the contract in this case because the exclusion would materially alter the contract. As described above, even among contracts between merchants, additional terms do not become part of the contract if they materially alter it. M.C.L. § 440.2207(2)(b). Here, the additional term relates to the exclusion of implied warranties and, under Michigan law, clauses regarding warranties materially alter contracts, none of the provisions regarding warranties becomes a part of the contract, and the UCC implied warranties are in effect. See S. C. Gray, Inc., 92 Mich.App. at 807. See also Challenge Mach. Co., 138 Mich. App. at 22 (finding that conflicting warranty provisions do not become part of a contract under § 440.2207(1)); Bosway Tube & Steel Corp., 65 Mich.App. at 429-430 (holding that "[s]ince the writings conflicted as to warranties, neither provision became a part of the contract, and the UCC implied warranty of merchantability was in effect."); Eaton Corp. v. Minerals Technologies Inc. and Specialty Minerals Inc., No. 96-162, 1999 WL 33485557 *5 (W.D. Mich. March 19, 1999) (Bell, J.) (finding that an exclusion of implied warranties materially alters a contract and, therefore, does not become part of a contract). Moreover, Official Comment 3 to § 440.2207 specifically identifies clauses negating standard warranties, such as warranties of merchantability or fitness for a particular purpose, as typical clauses that would normally "materially alter" the contract. Given that comment, and the cases on point interpreting Michigan law, this court concludes that, if M.C.L. § 440.2207(2) applies, the additional term providing for the exclusion of implied warranties would materially alter the contract and, therefore, would not be part of the contract.

**3. Whether Goods were Defective**

-15-

While express warranties need not be written and defendant did not exclude any implied warranties through the SSCI forms, defendant should still be granted summary judgment on the basis that no genuine issue is in dispute with respect to whether the plywood sold by defendant was actually defective and defendant is entitled to judgment as a matter of law.

As discussed above, defendant, as the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Matsushita, 475 U.S. at 587.  In support of its argument that there is no genuine issue with respect to whether the plywood sold by defendant was defective, defendant first cites to the report and affidavit of its expert witness, Scott Watson.  (Affidavit of Scott Watson, attached as Exhibit I to Defendant's Motion for Summary Judgment; Inspection Report of Scott Watson, attached as Exhibit J to Defendant's Motion for Summary Judgment)  Both Watson's affidavit and report state that, while there was some warping in the shelves, any issues with the 46-inch shelving units resulted from improper and/or insufficient bracing of the plywood used in the shelving unit and were not due to any specific defect in the plywood.  Watson further opined that any alleged defects in the wood product claimed by plaintiff were actually the fault of plaintiff's own design and construction of the shelving units.  Defendant also cited to the written deposition of Dan Keaton, on behalf of Plum Market, which states that Plum Market has never had the shelving units repaired and that they are still in use today.  (Deposition of Dan Keaton by Written Questions and Answers, ¶¶ 10-13; attached as Exhibit H to Defendant's Motion for Summary Judgment)  Furthermore, while Fenkell testified at his deposition that the shelves were warping and that Plum Market wanted them replaced (Deposition of Randy Fenkell, pp. 66-67; attached as Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment), he also specifically stated that he does not know what the cause of the

-16-

issue with the shelves was (Deposition of Randy Fenkell, pp. 70-71; attached as Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment).  Moreover, Fenkell physically inspected and used the plywood in the construction of the shelving units without reporting any warpage or problems with the plywood at that time.  (Deposition of Randy Fenkell, pp. 34, 56-57; attached as Exhibit A to Defendant's Motion for Summary Judgment)  Given defendant's evidence, it has met its initial burden of demonstrating the absence of a genuine issue of material fact with respect to whether the plywood sold by defendant was defective.

Since defendant met its initial burden, plaintiff  "must come forward with specific facts showing that there is a genuine issue for trial."  <u>Matsushita</u>, 475 U.S. at 587.  In its response, plaintiff asserts that some of the shelving installed in the Plum Market store experienced warping, that the warping was caused by defects in the plywood, and the plywood sold to plaintiff differed from the samples plaintiff had tested.  However, plaintiff produced no evidence in support of those assertions and, instead, it appears to merely rest upon the allegations contained in the complaint stating that the plywood was defective.  At oral argument, plaintiff's counsel indicated that he would induce evidence favorable to plaintiff when cross-examining defendant's expert, but plaintiff has no such evidence now and it has failed to demonstrate that there is a genuine dispute with respect to whether the plywood sold by defendant was defective.  All of plaintiff's breach of warranty claims are premised on its assertion that the plywood was defective and, given the absence of a genuine issue with respect to that question, defendant is entitled to judgment as a matter of law.

### 4. Warranty of Witness for a Particular Purpose

Defendant further argues that plaintiff cannot establish a breach of the Implied Warranty of Fitness for a Particular Purpose by defendant.  The implied warranty of fitness for a particular purpose is governed by M.C.L. § 440.2315 and that statute provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is … an implied warranty that the goods shall be fit for such purpose.

Here, defendant argues that no genuine issue exists with respect to whether plaintiff, through Fenkell, relied on defendant's skill or judgment to select or furnish suitable goods for the particular purpose for which the plywood was intended to be used.  As discussed above, defendant, as the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Matsushita, 475 U.S. at 587.  Here, in support of its argument, defendant notes that Fenkell admitted that, prior to the purchase, he was seeking three-quarter inch plywood with the most possible plies because he believed that more plies indicates more strength and a higher quality of plywood.  (Deposition of Randy Fenkell, p. 27; attached as Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment)  Defendant also notes that Fenkell also admitted to taking samples of the plywood in question and testing them prior to deciding on whether to purchase it.  (Deposition of Randy Fenkell, pp. 57, 62; attached as Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment)  In light of that evidence, defendant has met its initial burden.

Since defendant met its initial burden, plaintiff "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587.  Here, while

plaintiff only generally asserts that Fenkell relied on defendant's salesman skill and judgment
that the plywood furnished was suitable for fine finish carpentry in a high end boutique
supermarket, there is specific evidence in the record to support that assertion.  Fenkell testified at
his deposition that he only became interested in the plywood after Michael Moore, defendant's
salesman, told him about the number of plies (Deposition of Randy Fenkell, p. 30; attached as
Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to Plaintiff's
Response to Defendant's Motion for Summary Judgment) and that, after Fenkell expressed some
doubts about the quality of the plywood, Moore checked with his superiors before confirming
that the plywood was suitable for plaintiff's needs (Deposition of Randy Fenkell, pp. 31-32, 56-
57; attached as Exhibit A to Defendant's Motion for Summary Judgment and as Exhibit 1 to
Plaintiff's Response to Defendant's Motion for Summary Judgment).  Therefore, while Fenkell
did test samples and inspect the plywood prior to purchase, it also appears that he relied on the
assurances of defendant's representative.

Viewing that evidence and drawing all reasonable inferences in favor of plaintiff, as the
court must, Matsushita, 475 U.S. at 587, a rational trier of fact could find for plaintiff and,
therefore, there is a genuine issue for trial and defendant is not entitled to summary judgment on
the basis that plaintiff did not relied on its skill and judgment in selecting the goods.

### C. Consequential Damages

Defendant also argues that it excluded any consequential damages pursuant to M.C.L. §
440.2719(3)[8] through the SSCI forms defendant provided plaintiff at the time it accepted

---

[8]M.C.L. § 440.2719(3) provides: "Consequential damages may be limited or excluded
unless the limitation or exclusion is unconscionable. Limitation of consequential damages for
injury to the person in the case of consumer goods is *prima facie* unconscionable but limitation
of damages where the loss is commercial is not."

plaintiff's offer to purchase the goods.  As discussed above, with respect to the question of whether defendant excluded any implied warranties through the SSCI forms, this issue does not involve the Statute of Frauds and, instead, turns on what the terms of the contract were in this case.

As with the issue of whether implied warranties were excluded, the court must look to § 440.2207(3) to supply additional terms because the conduct of the parties recognizes the existence of a contract while the writings provided by the parties are insufficient to establish a contract.  See Challenge Mach. Co., 138 Mich. App. at 22-23 (stating that § 440.2207(3) "only comes into play if the writings fail to establish a contract, but the conduct of the parties recognizes the existence of such a contract.").  As discussed above, § 440.2207(3) provides that, in cases where the conduct of both parties recognizes the existence of a contract although the writings of the parties do not otherwise establish a contract, the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the UCC.

Here, the writings of the parties do not agree with respect to consequential damages and the supplementary terms incorporated by the UCC provide for such damages unless they are specifically excluded.  See M.C.L. §§ 440.2715[9], 440.2719(3).  Given those default supplementary terms, defendant's attempt to exclude consequential damages is ineffective.

---

[9]M.C.L. § 440.2715 provides "Buyer's incidental and consequential damages" provides for the recovery of consequential damages: "(2) Consequential damages resulting from the seller's breach include: (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."

Moreover, even if the SSCI forms were writings sufficient to establish a contract, the exclusion of consequential damages would still not be part of the contract in this case because such an exclusion would materially alter the contract.  As described above, even among contracts between merchants, additional terms do not become part of the contract if they materially alter it.  M.C.L. § 440.2207(2)(b).  Unlike with the exclusion of implied warranties, there is no case discussing whether Michigan law deems an exclusion of consequential damages or not.  Some courts have held that such an exclusion is a material alteration and, therefore, not part of the contract.  See First Sec. Mortgage Co. v Goldmark Plastics Compounds, 862 F Supp 918 (E.D. N.Y. 1994) (applying NY law); Winter Panel Corp. v Reichhold Chems., 823 F Supp 963 (D. Mass. 1993) (applying Mass law); Westinghouse Electric Corp. v Nielsons, Inc., 647 F Supp 896 (D. Colo. 1986) (applying Colo UCC); National Controls, Inc. v Commodore Bus. Machines, Inc., 163 Cal App 3d 688 (1985) (applying Cal law); USEMCO, Inc. v Marbro Co., 60 Md App 351 (1984) (applying MD UCC); Air Products & Chemicals, Inc. v Fairbanks Morse, Inc., 58 Wis 2d 193 (1973) (applying Pennsylvania law).  Other courts have held that an exclusion of consequential damages is not a material alteration and, therefore, becomes part of the contract.  See Paul Gottlieb & Co., Inc. v. Alps South Corp., 985 So. 2d 1, (Fla. Dist. Ct. App. 2d Dist. 2007) (applying Fla UCC); Suzy Phillips Originals, Inc. v. Coville, Inc., 939 F. Supp. 1012 (E.D. N.Y. 1996), aff'd, 125 F.3d 845 (2d Cir. 1997) (applying NY UCC); In re Chateaugay Corp., 162 B.R. 949 (Bankr. S.D. N.Y. 1994) (applying NY UCC); Kathenes v Quick Chek Food Stores, 596 F.Supp. 713 (D.N.J. 1984) (applying Ohio UCC); Northern States Power Co. v International Tel. & Tel. Corp., 550 F Supp 108 (D. Minn. 1982) (applying Minn UCC) (abrogated on other grounds by AKA Distributing Co. v. Whirlpool Corp., 137 F.3d 1083, 1086 (8th Cir. 1998).

-21-

Official Comment 5 to M.C.L. § 440.2207 fails to expressly mention a disclaimer of liability for consequential damages among the listed examples of additional terms which do not "materially alter" the contract within the meaning of subsection (2)(b), but it does contain language indicating that, at least under some circumstances, such a disclaimer is not to be considered material. Specifically, as an example of an additional term which involves no element of unreasonable surprise, and which is therefore to be incorporated in the contract unless seasonably objected to, the Comment refers to "a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance 'with adjustment' or *otherwise limiting remedy in a reasonable manner* (see Sections 2-718 and 2-719)" [emphasis added]. According to one of the provisions there referred to, § 2-719(3), consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.

This court finds that, if M.C.L. § 440.2207(2) applies to this issue, the exclusion of consequential damages would be a material alteration. Official Comment 5 does not expressly address the question posed here and other courts are split on this issue. However, the courts finding that an exclusion of all consequential damages is a material alteration have the better view. Even if such a clause is reasonable under UCC § 2-719, it may still result in hardship or surprise. This is such a case given that plaintiff's performance did not demonstrate acceptance of new terms and the majority of the damages sought by plaintiff are consequential damages. In light of the lack of express awareness of the exclusion by plaintiff and the significance of such an exclusion, the exclusion of consequential damages should be deemed a material alteration that is not part of the contract between the parties, assuming that M.C.L. § 440.2207(2) even applies to this case.

**V. Conclusion**

-22-

For the reasons discussed above, the court recommends that defendant's motion be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                    S/Virginia M. Morgan
                    Virginia M. Morgan
                    United States Magistrate Judge


Dated: April 30, 2009

-23-

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 30, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan